IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ROME DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. – Rome

DEC 15 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

CALANDRA J. HIGGINS,

Plaintiff,

Civil Action No. _____

v.

PFC JORDAN VASSER,

PFC XAVIER BRAY,

SGT. DAN BICKERS,

LT. CHRISTY HAZELWOOD,

DIRECTOR SOMMER ROBINSON,

FLOYD COUNTY, GEORGIA,

BINKLEY'S AUTO REPAIR & TOWING,

Defendants.

4 25-CV- 348

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### I. INTRODUCTION

1. This is a civil-rights action brought under 42 U.S.C. § 1983 to redress violations of Plaintiff's First, Fourth, and Fourteenth Amendment rights.

2. Plaintiff's claims arise from an unlawful tow, racially discriminatory enforcement, denial of supervisory assistance, and manipulation of dispatch records.

3. Plaintiff seeks compensatory damages, punitive damages, and injunctive relief.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

5. Supplemental jurisdiction exists under 28 U.S.C. § 1367.

6. Venue is proper under 28 U.S.C. § 1391(b).

## III. PARTIES

7. Plaintiff Calandra J. Higgins is a resident of Floyd County, Georgia.

8. Defendant Patrolman First Class Jordan Vasser is a sworn officer of the Floyd County Police Department and is sued in his individual capacity.

9. Defendant Patrolman First Class Xavier Bray is a sworn officer of the Floyd County Police Department and is sued in his individual capacity.

10. Defendant Sergeant Dan Bickers was the supervising sergeant on duty and is sued in his individual capacity.

11. Defendant Lieutenant Christy Hazelwood was a supervisor and E-911 dispatcher and is sued in her individual capacity.

12. Defendant Director Sommer Robinson was Director of Floyd County E-911 and is sued in her individual capacity.

13. Defendant Floyd County is liable for policies, customs, and practices.

14. Defendant Binkley's Auto Repair & Towing is a private towing company operating in Floyd County, Georgia. At all relevant times, Binkley's Auto Repair & Towing acted jointly with Floyd County officers in towing and impounding Plaintiff's vehicle, and thereby participated in the conduct complained of herein.

## IV. FACTUAL ALLEGATIONS

15. On the evening of August 30, 2025, into the early morning hours of August 31, 2025, Plaintiff lawfully parked her vehicle on Flora Avenue in Rome, Floyd County, Georgia, in an area where on-street parking is permitted and commonly used by residents and visitors.

16. All vehicles parked along Flora Avenue at that time, including Plaintiff's vehicle, were legally parked and positioned fully within the roadway margin.

17. Plaintiff's vehicle did not block or obstruct the complainant neighbor's driveway, ingress, or egress.

18. Despite this, the complainant contacted Floyd County E-911 and alleged that Plaintiff was blocking her driveway.

19. Floyd County E-911 dispatched Defendant PFC Jordan Vasser to respond to the complainant's call regarding her driveway allegedly being blocked by Plaintiff's parked vehicle.

20. Upon arrival, Defendant Vasser parked his patrol vehicle in a manner that blocked the complainant's driveway. Defendant Vasser observed that Plaintiff's vehicle was not blocking the driveway. Nevertheless, Defendant Vasser insisted that Plaintiff move her vehicle, not based on any identified legal violation, but because the complainant stated that this was where she "usually" pulled into her yard.

21. Defendant Vasser approached Plaintiff's son in a confrontational and dismissive manner rather than engaging in neutral fact-finding. During this encounter, Defendant Vasser directed Plaintiff's son not to park in front of the complainant's address, stating "this vehicle needs to be moved and don't park in front of her address".

22. Plaintiff's son questioned Defendant Vasser as to whether parking in that location was illegal.

23. Only after this question was raised did Defendant Vasser assert, that if you want to get technical, all of the vehicles on the roadway are illegally parked and that Plaintiff's vehicle was blocking the lane of travel.

24. This asserted justification had not been articulated prior to Defendant Vasser being questioned and emerged only after Defendant Vasser's instruction was challenged.

25. Plaintiff approached Defendant Vasser and asked him to articulate the specific law or ordinance she had allegedly violated.

26. Defendant Vasser was unable to identify any applicable statute or ordinance justifying enforcement or towing.

27. After it became clear that Defendant Vasser could not identify a lawful basis for enforcement and that the stated reason for requiring Plaintiff to move was that the complainant did not want Plaintiff parked there, Plaintiff declined to move her legally parked vehicle.

28. Defendant Vasser became increasingly hostile toward Plaintiff for asserting her rights and questioning his authority.

29. After Defendant Vasser requested a tow truck, Defendant PFC Xavier Bray contacted Defendant Vasser by cellular phone.

30. During that call, Defendant Vasser stated to Defendant Bray, "maybe they'll listen to you when you get here."

31. Defendant Bray then asked, "Are they Black?" Defendant Vasser responded affirmatively, though Defendant Bray appeared not to hear him and stated, "They must be Black people," demonstrating explicit racial bias directed toward Plaintiff and her family.

32. After Defendant Vasser became aware that Plaintiff had contacted 911 to request supervisory assistance and while Defendant Bray was en route, Defendant Vasser placed a call to Defendant Sgt. Dan Bickers, who had been dispatched as the supervising officer. Defendant Vasser intercepted supervisory review by contacting Defendant Bickers directly rather than permitting an independent supervisory response to the scene.

33. During this recorded call, Defendant Bickers stated, "send me a picture so I can tell this bitch I'm not coming down there." During the same conversation, Defendant Bickers asked whether Plaintiff was intoxicated. Defendant Vasser responded that Plaintiff was not intoxicated, only mad because "the white lady" did not want her parked there and that "the Black

lady" did not want to move her vehicle. The exchange later included Defendant Bickers stating, "who's bitching — the Black lady?" reflecting the use of racial identifiers and racial bias influencing enforcement decisions.

34. Plaintiff requested a supervisor from Defendant Vasser multiple times before the tow was ordered. Defendant Vasser refused each request.

35. Immediately before Vasser escalated to the tow, Plaintiff again requested a supervisor. Defendant Vasser refused and told Plaintiff that if she wanted a supervisor, she would have to call 911 herself.

36. Plaintiff contacted Floyd County E-911 and requested supervisory assistance. Defendant Bickers was notified and reflected in CAD as the responding supervisor, but he did not respond to the scene.

37. Plaintiff's supervisor request was improperly classified by the first dispatcher in the CAD system and attached to the complainant's original call rather than being entered as a separate supervisory request.

38. As a result of this misclassification and the interception of supervisory review by Defendant Vasser, Plaintiff's request for supervision was delayed and undermined, requiring Plaintiff to place an additional call that would not have been necessary had her request been properly coded.

39. Defendant Binkley's Auto Repair & Towing arrived while Plaintiff was still attempting to obtain supervisory review. The tow-truck driver asked Plaintiff whether she wanted her vehicle dragged since she did not want to give officers her key. The tow truck driver can be heard on body worn camera stating that Plaintiff and her family need to grow up, while Defendant Bray stated words to the effect of, when your parents tell you to do something and you don't listen, you get punished.

40. Defendant Hazelwood answered the Plaintiff's second call for supervisory oversight; this call was made as the tow was occurring.

41. Defendant Hazelwood stated, "there's nothing I can do," and "I'm not over the police department," and "I can't make the police not tow your car". She failed to create a separate CAD event or ensure supervisory intervention while Plaintiff's vehicle was being actively towed.

42. Defendant Bickers, who had already been notified of Plaintiff's supervisor request, refused to come to the scene or contact Plaintiff, stating in substance that he would not speak with Plaintiff until "they were done" and that he agreed with the tow.

43. Defendant Bickers further stated that if Plaintiff wanted a supervisor, "he would come down and clear the whole road with tow trucks" and that it didn't matter to him.

44. During a radio communication between Defendant Vasser and Defendant Sgt. Dan Bickers concerning Plaintiff, Sgt. Bickers asked, "Who is she?" and Defendant Vasser responded, "I don't know. I haven't run her yet." After that exchange, Defendant Vasser exited his patrol vehicle and caused Plaintiff's personal identifying information and vehicle information to be run through law-enforcement databases, including NCIC and GCIC, without reasonable suspicion, probable cause, or any lawful investigatory purpose, and after the decision to tow Plaintiff's vehicle had already been made.

45. Defendant Vasser, Defendant Bray, and the tow-truck driver engaged in conversations regarding the tow that were punitive in nature rather than based on lawful enforcement.

46. Defendant Vasser and the tow-truck driver discussed how long Plaintiff's vehicle would be held and why, treating the tow as punishment rather than enforcement. Defendant Vasser stated that Plaintiff could retrieve

her vehicle "whenever," but that the tow was occurring because Plaintiff refused to move and accused him of making up laws.

47. The tow-truck driver decided to hold Plaintiff's vehicle for approximately two and a half days, a decision discussed on body-worn camera footage, during which the tow-truck driver smiled at Defendant Vasser after he advised the plaintiff of when she could retrieve her vehicle.

48. Defendant Bickers contacted Plaintiff only after the tow had begun, ignored Plaintiff's complaint of racial favoritism at the scene, and later added statements to a supplemental report expressing offense that Plaintiff would perceive racial bias, despite having engaged in racially charged conversations with Defendant Vasser.

49. Plaintiff's vehicle was seized despite the absence of a valid parking violation, traffic hazard, or lawful impound authority. No other similarly situated vehicles parked along the same roadway were towed.

50. Defendants Vasser and Bickers later returned to the scene hours after the incident and took measurements in an effort to construct a post-hoc justification for the tow.

51. Additional alleged violations were asserted after the fact that they had not been cited or articulated at the scene, and the resulting police report

contained statements inconsistent with Defendant Vasser's contemporaneous body-worn camera statements.

52. Approximately a month after the incident, Defendant Vasser sent an internal email to Major Lively asserting that his decision to tow Plaintiff's vehicle had been lawful and citing post-incident legal research. In that communication, Defendant Vasser acknowledged that he had received a video from the complainant after leaving the scene but had not included or referenced that video or any related allegations in the incident report, which had been completed weeks earlier.

53. Defendant Vasser nevertheless sought to rely on this withheld material only after Plaintiff began making complaints and after his initial justification for the tow was called into question. Defendant Vasser's receipt of the video occurred solely by virtue of his official position, rendering the video official evidence subject to documentation and preservation requirements.

54. On September 13, 2025, Plaintiff filed a formal complaint regarding Defendant Hazelwood's conduct with her supervisor, Defendant Sommer Robinson. After the complaint—approximately two weeks after the incident—Defendant Robinson accessed the CAD record and made after-the-fact edits to the memo narrative while leaving the incorrect CAD

classification intact. Defendant Robinson responded by defending Defendant Hazelwood's conduct in an email response to Plaintiff.

55. The incorrect CAD classification prevented proper oversight and review that would have occurred had Plaintiff's supervisor request been accurately coded.

56. After Plaintiff submitted open-records requests, internal emails were sent after hours, at approximately 8:57 p.m., from open-records personnel to police command staff alerting them to Plaintiff's requests and noting that no citation had been issued at the time of the tow.

57. As part of Plaintiff's open records request, Plaintiff received body-worn camera footage bearing a large digital watermark that obscured critical portions of the video. When Plaintiff requested that the watermark be removed so the footage could be meaningfully reviewed, she was directed to the County Attorney, who stated that the watermark could not be removed and thereafter ceased responding to Plaintiff's calls and messages.

58. When Plaintiff went to the County Attorney's office, she was met in the lobby by the attorney and a staff member, they were dismissive and refused to remove the watermark. After a heated discussion, the Plaintiff stated her intent to pursue legal action due to the violation of the Georgia Open

Records Act, the unwatermarked body-worn camera footage was provided the following day.

59. Plaintiff was nevertheless denied timely access to additional body-worn camera footage from other officers and was required to submit additional requests for materials that should have been produced together.

60. No meaningful investigation or corrective action was initiated by County leadership. This pattern of silence, obstruction, retaliation, and ratification reflects a custom or practice of suppressing complaints and avoiding accountability.

61. Following Plaintiff's submission of multiple open records requests and formal disputes challenging inflated and excessive invoice charges, Plaintiff was directed by an Open Records clerk to appear in person at the Floyd County E-911 Center to address the billing dispute, with the clerk stating that E-911 personnel were the only individuals authorized to discuss or resolve the charges. Plaintiff went to the E-911 Center as instructed but found the building locked, was unable to gain entry, received no response through the intercom, and received no answer when calling the telephone number provided by the Open Records clerk. As Plaintiff was leaving the premises, Defendant Sommer Robinson, Director of Floyd County E-911,

pulled up alongside Plaintiff's vehicle and reached for Plaintiff's door handle. Plaintiff opened her door, at which time Defendant Robinson stated that she had been contacted by the Open Records clerk and informed that Plaintiff was en route. Defendant Robinson further stated that Plaintiff was being charged Robinson's own hourly rate for certain open records requests because Robinson was the only individual authorized to retrieve specific categories of records, including complaints and standard operating procedures. However, Defendant Robinson provided no meaningful assistance, explanation, or process for disputing the charges, stated that she did not know how Plaintiff could challenge the invoices, and referred Plaintiff to the County Attorney. No clarification, corrective action, or resolution was offered.

62. At all relevant times, Plaintiff acted lawfully and asserted her rights in good faith, while Defendants' conduct escalated the encounter and caused the harms complained of herein.

COUNT I

FOURTEENTH AMENDMENT EQUAL PROTECTION – RACIAL
DISCRIMINATION

(42 U.S.C. § 1983)

Plaintiff realleges and incorporates Paragraphs 15 through 62 of the Factual
Allegations as if fully set forth herein.

1. Defendants Vasser, Bray, and Bickers intentionally treated Plaintiff
differently than similarly situated individuals on the basis of her race, in
violation of the Equal Protection Clause of the Fourteenth Amendment.

2. Plaintiff's vehicle was the only vehicle seized despite multiple vehicles
being parked in the same manner along the roadway.

3. Defendant Bray asked, "Are they Black?" and then stated, "They must be
Black people," demonstrating explicit racial animus directed at Plaintiff and
her family.

4. Defendant Vasser distinguished between "the white lady" and "the Black
lady," showing discriminatory intent.

5. Defendant Bickers reinforced racial bias when he asked, "Who's
bitching? The Black lady?" during a phone call he believed would not be
recorded.

6. Defendants selectively enforced alleged violations only against Plaintiff.

7. Supervisory personnel ratified discriminatory conduct by refusing to

intervene or correct the misconduct.


### COUNT II
### FOURTH AMENDMENT – UNREASONABLE SEIZURE (UNLAWFUL TOW AND IMPOUND)
### (42 U.S.C. § 1983)

Plaintiff realleges and incorporates by reference Paragraphs 15 through 62 of the Factual Allegations as if fully set forth herein.

1. Defendants Jordan Vasser, Xavier Bray, Dan Bickers, and Defendant Binkley's Auto Repair & Towing, acting under color of state law and in concert with one another, seized Plaintiff's vehicle without a warrant and without probable cause, in violation of the Fourth Amendment.

2. Plaintiff's vehicle was lawfully parked on a public residential roadway where on-street parking is permitted and did not block any driveway, ingress, egress, or lane of travel.

3. Defendant Vasser observed that Plaintiff's vehicle was not obstructing the complainant's driveway and was unable to identify any statute, ordinance, or lawful basis authorizing enforcement or towing.

4. Despite the absence of a traffic hazard or parking violation, Defendant Vasser ordered Plaintiff's vehicle to be towed based on the complainant's preference that Plaintiff not be parked in that location, rather than on any objective legal standard.

5. Plaintiff repeatedly requested supervisory review before the tow occurred. Defendant Vasser refused those requests and instructed Plaintiff to call 911 herself if she wanted a supervisor.

6. Plaintiff requested supervisory assistance through Floyd County E-911, but her request was misclassified in the CAD system, delaying and undermining meaningful supervisory review prior to the seizure of her vehicle.

7. Defendant Hazelwood, the E-911 shift supervisor on duty, failed to intervene or ensure supervisory review while the tow was actively occurring, despite being aware of Plaintiff's request.

8. Defendant Sgt. Dan Bickers was notified of Plaintiff's request for a supervisor but refused to come to the scene or speak with Plaintiff prior to the tow and instead expressed agreement with the seizure.

9. Defendant Binkley's Auto Repair & Towing acted jointly with Defendants Vasser and Bray to seize Plaintiff's vehicle, despite the absence of lawful authority to do so.

10. Defendants discussed the tow in punitive terms, including discussion of how long Plaintiff's vehicle would be held, rather than treating the seizure as a neutral enforcement action.

11. Plaintiff's vehicle was held for approximately two and one-half days, despite the lack of any citation, traffic hazard, or lawful impound justification.

12. No other similarly situated vehicles parked along the same roadway were seized or towed.

13. After the seizure, Defendants attempted to retroactively justify the tow by asserting new theories and alleged violations that had not been articulated at the scene.

14. The warrantless seizure of Plaintiff's vehicle was unreasonable under the circumstances and violated Plaintiff's clearly established Fourth Amendment right to be free from unreasonable seizures of property.

15. As a direct and proximate result of Defendants' actions, Plaintiff suffered loss of use of her vehicle, financial loss, emotional distress, and other damages.

## COUNT III

### FIRST AMENDMENT RETALIATION

### (42 U.S.C. § 1983)

Plaintiff realleges and incorporates Paragraphs 15 through 62 as if fully set forth herein.

1. Plaintiff engaged in activity protected by the First Amendment when she questioned Defendant Vasser's authority, asserted her rights, refused to comply with unlawful demands, and requested supervisory assistance.

2. Defendants Vasser, Bray, and Bickers were aware of Plaintiff's protected speech at all relevant times.

3. Immediately after Plaintiff questioned Defendant Vasser's misuse of authority and requested that he identify a lawful basis for enforcement, Defendants escalated hostility toward Plaintiff, mocked her assertions of rights, and treated her protected speech as defiance warranting punishment.

4. Defendants Vasser and Bray laughed at Plaintiff's first 911 call requesting a supervisor and made dismissive remarks about her seeking oversight, demonstrating retaliatory animus toward Plaintiff for asserting her rights.

5. In direct response to Plaintiff's protected speech and refusal to comply with unlawful demands, Defendant Vasser ordered Plaintiff's vehicle to be towed without probable cause or lawful justification.

6. Defendant Sgt. Dan Bickers ratified and reinforced the retaliatory conduct by telling Defendant Vasser that no supervisor would come to the scene until "after y'all are done," ensuring that Plaintiff would be punished for asserting her rights rather than receiving lawful supervisory review.

7. Defendant Bickers further demonstrated retaliatory intent when, during a phone call captured on body-worn camera audio, he stated that if Plaintiff insisted on a supervisor, they would "tow the whole road." This explicit threat tied the use of police power directly to Plaintiff's exercise of her First Amendment right to request supervisory oversight and demonstrates that the

tow was carried out as punishment rather than for any legitimate law enforcement purpose.

8. Defendant Hazelwood further contributed to the retaliation by refusing to dispatch a supervisor, speaking to Plaintiff in a rude and hostile tone during her second 911 call, and misclassifying Plaintiff's supervisory request to prevent proper review while the tow was occurring.

9. Defendant Binkley's Auto Repair & Towing acted jointly with law enforcement in carrying out the retaliatory seizure. During the tow process, the tow truck driver asked Plaintiff whether she wanted her vehicle dragged when she did not immediately provide her keys, reinforcing the punitive nature of the action.

10. Defendants further treated the tow and impoundment as punishment by discussing how long Plaintiff's vehicle would be held and by holding the vehicle for approximately two and a half days despite the absence of any lawful impound justification.

11. The retaliatory tow, threats, mocking conduct, and coordinated refusal to provide supervisory oversight constitute adverse actions that would deter a person of ordinary firmness from exercising First Amendment rights.

12. There was a direct causal connection between Plaintiff's protected speech and Defendants' adverse actions.

13. As a direct and proximate result of Defendants' retaliation, Plaintiff suffered loss of property, loss of use of her vehicle, financial loss, emotional distress, humiliation, and other damages

COUNT IV
FOURTEENTH AMENDMENT – PROCEDURAL DUE PROCESS
(42 U.S.C. § 1983)

Plaintiff realleges and incorporates by reference Paragraphs 15 through 62 of the Factual Allegations as if fully set forth herein.

1. Plaintiff had a protected property interest in her vehicle and in the lawful use and possession of that vehicle.

2. Defendants deprived Plaintiff of her property by seizing and impounding her vehicle without a warrant, without probable cause, and without lawful authority.

3. Plaintiff was not provided notice or a meaningful opportunity to be heard prior to the deprivation of her property.

4. Plaintiff repeatedly requested supervisory review before the tow occurred, but Defendants refused those requests, misclassified her supervisory calls, and intercepted or delayed review in a manner that prevented any meaningful pre-deprivation process.

5. Defendants' actions were not random or unauthorized, but were discretionary decisions made by law-enforcement officers, 911 dispatchers, and supervisory personnel acting within the scope of their authority, all of whom had the ability to provide notice, supervisory review, or other procedural safeguards and deliberately chose not to do so.

6. Following the seizure, Defendants failed to provide Plaintiff with a timely or meaningful post-deprivation remedy and instead attempted to justify the seizure after the fact while obstructing review of Plaintiff's complaints.

7. The lack of notice, the denial of supervisory review, and the absence of meaningful pre- or post-deprivation process violated Plaintiff's right to procedural due process under the Fourteenth Amendment.

8. As a direct and proximate result of Defendants' denial of due process, Plaintiff suffered loss of property, loss of use of her vehicle, financial loss, emotional distress, and other damages.

COUNT V
SUPERVISORY LIABILITY / FAILURE TO INTERVENE
(42 U.S.C. § 1983)

Plaintiff realleges and incorporates by reference Paragraphs 15 through 62 of the Factual Allegations as if fully set forth herein.

1. Defendant Sgt. Dan Bickers was a supervisory officer with authority over Defendants Vasser and Bray and was aware, in real time, that Plaintiff's constitutional rights were being violated during the encounter on August 30–31, 2025.

2. Despite having actual knowledge of the unlawful tow, the racially charged statements, and Plaintiff's repeated requests for supervisory intervention,

Defendant Bickers failed to intervene, refused to come to the scene, and expressly approved the continuation of the unconstitutional conduct.

3. Defendant Bickers had the ability and opportunity to prevent or stop the constitutional violations but deliberately chose not to do so, instead ratifying and reinforcing the misconduct.

4. Defendant Hazelwood, acting in a supervisory and dispatch capacity, was aware that Plaintiff was requesting supervisory review while her vehicle was being towed and had the authority to ensure proper classification of the call and meaningful supervisory intervention.

5. Defendant Hazelwood failed to dispatch a supervisor, misclassified Plaintiff's supervisory request, and treated the tow as a foregone conclusion rather than responding neutrally, thereby facilitating and ratifying the ongoing constitutional violations.

6. Defendant Sommer Robinson, acting in a command-level and oversight role, later reviewed Plaintiff's complaints and the underlying records and ratified the conduct of Defendant Hazelwood rather than taking corrective action, thereby approving and perpetuating the constitutional violations.

7. Each supervisory Defendant knew or reasonably should have known that their subordinates were engaging in conduct that violated Plaintiff's

constitutional rights and failed to take reasonable steps to prevent or correct

the violations.

8. The failure of supervisory Defendants to intervene, supervise, discipline,

or correct the misconduct directly caused and contributed to the deprivation

of Plaintiff's constitutional rights.

9. As a direct and proximate result of Defendants' supervisory failures,

Plaintiff suffered loss of property, loss of use of her vehicle, emotional

distress, humiliation, and other damages.

COUNT VI
Fourth Amendment – Unlawful Access and Misuse of Criminal Justice
Databases
(42 U.S.C. § 1983)

Plaintiff realleges and incorporates by reference Paragraphs 15 through 62 as if fully set forth herein.

1. At all relevant times, Defendant Vasser and Defendant Sgt. Dan Bickers were acting under color of state law as sworn law-enforcement officers with authorized access to criminal justice information systems, including NCIC and GCIC.

2. During a radio communication concerning Plaintiff, Defendant Sgt. Dan Bickers specifically asked Defendant Vasser, "Who is she?" Defendant Vasser responded, "I don't know. I haven't run her yet," indicating that he had not yet accessed Plaintiff's personal identifying information through law-enforcement databases. Despite the absence of any criminal suspicion, investigatory detention, or lawful basis, Defendant Bickers did not object to or prohibit the running of Plaintiff's personal information, and both officers proceeded as if such access was appropriate.

3. After that exchange, Defendant Vasser exited his patrol vehicle and caused Plaintiff's personal identifying information and vehicle information to be accessed through NCIC, GCIC, and related law-enforcement databases, including Plaintiff's name, vehicle tag, VIN, and residential address. This access occurred after the decision to tow Plaintiff's vehicle had already been approved and without reasonable suspicion, probable cause, or any legitimate law-enforcement purpose.

4. At the time Defendant Vasser accessed Plaintiff's information, Plaintiff had not committed any crime, had not been cited, detained, or arrested, and posed no threat to officer safety. The database access was not necessary to effectuate the tow and was unrelated to any lawful investigatory function.

5. At the time of the database access, it was clearly established that law-enforcement officers may not access NCIC or GCIC databases for curiosity, retaliation, identification without suspicion, or post-hoc justification, and that such systems may only be used for legitimate law-enforcement purposes supported by reasonable suspicion or probable cause.

6. Defendant Vasser's access to Plaintiff's personal and vehicle information, and Defendant Bickers's acquiescence and supervisory approval of that access, constituted an unreasonable search and misuse of criminal justice databases in violation of the Fourth Amendment to the United States Constitution.

7. As a direct and proximate result of Defendants' unlawful access and misuse of Plaintiff's personal information, Plaintiff suffered an invasion of her privacy, severe emotional distress, fear for her personal safety arising from the unauthorized access to her home address, and extreme humiliation caused by Defendants' open discussion and speculation about her licensing and registration status in front of the tow truck driver, despite Plaintiff being the lawful owner of the vehicle.

## COUNT VII
### MUNICIPAL LIABILITY – UNCONSTITUTIONAL POLICIES, PRACTICES, AND CUSTOMS
#### (Monell v. Department of Social Services, 42 U.S.C. § 1983)

Plaintiff realleges and incorporates by reference Paragraphs 15 through 62 of the Factual Allegations as if fully set forth herein.

1. At all relevant times, Defendants Floyd County, Floyd County Police Department, and Floyd County E-911 were responsible for establishing, implementing, and enforcing policies, practices, customs, and training governing traffic enforcement, towing, supervisory review, dispatch operations, and responses to citizen complaints.

2. Plaintiff's constitutional injuries were caused by official policies, longstanding customs, and widespread practices of Floyd County and its departments, including the use of discretionary towing without lawful justification, the denial or obstruction of supervisory review when citizens assert their rights, and the tolerance of retaliatory enforcement against individuals who question police authority.

3. Defendants maintained a custom and practice of permitting officers and supervisors to enforce laws selectively, to escalate encounters when citizens request oversight, and to treat supervisory review as optional or punitive rather than mandatory.

4. Floyd County E-911 personnel, including supervisory dispatch staff, routinely misclassified supervisory requests, failed to escalate complaints in accordance with protocol, and acted as a barrier to meaningful review, reflecting a systemic failure rather than an isolated incident.

5. Supervisory and command-level officials, including Defendants Bickers, Hazelwood, and Robinson, were aware of the constitutional violations occurring during and after the incident involving Plaintiff and failed to intervene, correct, or discipline the conduct, thereby ratifying the unlawful actions.

6. Following the incident, County officials further ratified the unconstitutional conduct by defending the actions taken, altering or supplementing records after the fact, obstructing Plaintiff's access to information, and discouraging further engagement with Plaintiff rather than addressing the violations.

7. Defendants failed to adequately train, supervise, and discipline officers and dispatch personnel regarding constitutional limits on towing, the handling of supervisory requests, and the protection of citizens' First and Fourteenth Amendment rights.

8. These failures reflect deliberate indifference to the known or obvious

consequences of inadequate policies, training, and supervision, making

constitutional violations such as those suffered by Plaintiff highly

predictable and recurring.

9. As a direct and proximate result of Defendants' unconstitutional policies,

practices, customs, and deliberate indifference, Plaintiff suffered violations

of her constitutional rights, loss of property, emotional distress, humiliation,

and other damages.

COUNT VIII
STATE-LAW CONVERSION AND TRESPASS TO CHATTELS
(O.C.G.A. § 51-10-1 et seq.)

Plaintiff realleges and incorporates by reference Paragraphs 15 through 62 of
the Factual Allegations as if fully set forth herein.

1. Plaintiff was the lawful owner and possessor of her vehicle at all relevant

times.

2. Defendants intentionally exercised dominion and control over Plaintiff's

vehicle without lawful authority, justification, or consent by towing,

impounding, and retaining the vehicle.

3. At all relevant times, Defendants Vasser, Bray, Bickers, Hazelwood, and

Binkley's Auto Repair & Towing, jointly participated in, authorized,

directed, or ratified the towing, impoundment, and continued retention of

Plaintiff's vehicle, thereby exercising unlawful dominion and control over Plaintiff's property.

4. Defendants' actions deprived Plaintiff of the use and possession of her vehicle and interfered with Plaintiff's ownership rights.

5. The seizure and continued retention of Plaintiff's vehicle were not authorized by law, were not supported by any valid citation or legal basis, and exceeded any lawful privilege Defendants may have claimed.

6. Defendant Binkley's Auto Repair & Towing, acted jointly with law-enforcement Defendants in carrying out the unauthorized tow and in determining the length of time Plaintiff's vehicle would be retained.

7. Defendants' conduct constituted conversion and trespass to chattels under Georgia law.

8. As a direct and proximate result of Defendants' actions, Plaintiff suffered loss of use of her vehicle, financial loss, inconvenience, emotional distress, and other damages.

COUNT IX
STATE-LAW CIVIL CONSPIRACY
(O.C.G.A. § 51-12-30)

Plaintiff realleges and incorporates by reference Paragraphs 15 through 62 of the Factual Allegations as if fully set forth herein.

1. At all relevant times, Defendants acted in concert and reached a mutual understanding to commit unlawful acts and to accomplish lawful acts by unlawful means.

2. Defendants Vasser, Bray, Bickers, Hazelwood, and Binkley's Auto Repair & Towing, knowingly agreed to and participated in the unlawful towing, impoundment, and continued retention of Plaintiff's vehicle without legal justification.

3. The agreement and coordinated conduct included escalating enforcement after Plaintiff asserted her rights, denying supervisory intervention, treating the tow as punishment, and determining the duration of impoundment without lawful authority.

4. Each Defendant committed overt acts in furtherance of the conspiracy, including ordering the tow, refusing supervisory review, facilitating dispatch and impoundment, and retaining Plaintiff's vehicle for punitive purposes.

5. Defendants' coordinated actions were intentional, malicious, and carried out with reckless disregard for Plaintiff's rights.

6. As a direct and proximate result of Defendants' civil conspiracy, Plaintiff suffered loss of property, loss of use of her vehicle, financial loss, emotional distress, humiliation, and other damages.

## COUNT X
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (O.C.G.A. § 51-12-6)

Plaintiff realleges and incorporates by reference Paragraphs 15 through 62 of the Factual Allegations as if fully set forth herein.

1. Defendants' conduct toward Plaintiff was intentional, willful, malicious, and carried out with reckless disregard for the likelihood of causing severe emotional distress.

2. Defendants abused their positions of authority, escalated hostility when Plaintiff asserted her rights, mocked and dismissed her requests for supervisory review, threatened punitive enforcement, and carried out a retaliatory tow and prolonged impoundment of Plaintiff's vehicle without lawful justification.

3. Defendants further subjected Plaintiff to humiliating and degrading treatment, including racially charged remarks, threats to escalate enforcement against the entire roadway, and dismissive and hostile responses when Plaintiff sought assistance through emergency and supervisory channels.

4. Defendants' conduct was extreme and outrageous, exceeded all bounds of decency tolerated in a civilized society, and was utterly intolerable in a law-enforcement and public-safety context.

5. As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, including anxiety, humiliation, fear, and ongoing emotional harm.

6. Plaintiff's emotional distress was genuine, severe, and of a nature that no reasonable person could be expected to endure.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and grant the following relief:

A. A declaration that Defendants' acts and omissions violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution;

B. Compensatory damages in an amount to be determined by a jury for Plaintiff's economic losses, emotional distress, humiliation, and other injuries suffered as a result of Defendants' unlawful conduct;

C. Punitive damages against the individual Defendants in an amount sufficient to punish and deter willful, malicious, and reckless misconduct, as permitted by law;

D. Prospective injunctive relief requiring Defendants to implement, enforce, and adhere to constitutionally compliant policies governing towing decisions, supervisory response procedures, CAD call classification, complaint handling, and body-worn camera usage;

E. An order requiring a neutral, independent audit of Defendants' compliance with such policies for a defined period of time, with reporting to the Court, to prevent future constitutional violations;

F. Reasonable costs and expenses incurred in bringing this action, including allowable litigation costs, pursuant to 42 U.S.C. § 1988 and other applicable law;

G. Pre-judgment and post-judgment interest as allowed by law; and

H. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Calandra J. Higgins

Plaintiff, Pro Se

Email: cjones3393@yahoo.com